## Case No. 10,467.

O'HARA et al. v. The MARY.

[1 Bee, 100.] [1]

District Court, D. South Carolina. June 4, 1798.

**ADMIRALTY JURISDICTION—AMOUNT INVOLVED—CHANGING SECURITY.**

Of three several sums advanced for repairs and outfit of this vessel, one only could attach as a sufficient lien to give jurisdiction to the admiralty; and that security having been changed, the libel was dismissed in toto.

[Cited in Putnam v. The Polly, Case No. 11,482.]

In admiralty.

BY THE COURT. The libel states three allegations whereon to found a claim against this ship: 1st. For 741 dollars, laid out by Campbell and O'Hara as ship's husband, at Jamaica, for the benefit of the owner and owners of said ship, (and particularly for the benefit of J. G. Glover of New-York, the

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

proprietor of the ship by virtue of a bill of sale or transfer from Richard Hughes, the registered owner) to procure insurance on her intended voyage from Kingston to Charleston. 2d. For 402 dollars, advanced by a Mr. Earle, in Jamaica, to the captain, for necessaries for the ship; for which sum the captain drew a bill on the reputed owner of the ship, expressing that the same was for and on account of the disbursements of the ship. This bill was afterwards indorsed by Daniel O'Hara and son, that Earle might be enabled to negotiate it. This was done at the particular request of the captain, who, in consideration thereof, agreed to deliver, and actually delivered, possession of the ship to these indorsers, as security. They now hold the ship for that purpose; and the bill having been protested and returned, it is insisted that the ship must be considered as duly hypothecated. 3d. For 600 dollars, advanced by said Daniel O'Hara and son in Charleston, to the captain for wages of the crew. For this sum also another bill was drawn by the captain on Glover, the reputed owner, for value received in the disbursements of the ship. This transaction was also, by agreement of the captain, to be considered as an hypothecation of the vessel; and this bill, too, was protested. To reimburse these several sums the libel prays that the ship may be sold, and the balance, if any, paid to said Daniel O'Hara and son, for and in behalf of said Glover, who is legally entitled thereto as purchaser from Richard Hughes, the registered owner, for valuable consideration expressed in the bill of sale.

To this libel a claim has been interposed by Richard Morgan, of New-York, setting forth a bill of sale, for valuable consideration, from Hughes to him, dated 23d February, 1797, by which he became lawful owner of the ship agreeably to the act of congress; the vessel being at that time in parts beyond the seas. Claimant prays that the ship may be adjudged to him, or be sold to satisfy him for money due to him. Richard Hughes, the registered owner, has interposed a plea to the jurisdiction, inasmuch as the several contracts and causes of suit, if any exist, were made on land, within the jurisdiction of the courts of common law, and not of the admiralty. The captain who was, at first, made a party, has been since admitted as a witness, by consent of all parties. Several exhibits have been filed; particularly two letters of J. G. Glover. One of these is to Campbell and O'Hara, at Jamaica, dated 16th December, 1797: the other is to Daniel O'Hara and son, dated 1st May, 1798.

In support of the jurisdiction of the court it is contended: 1st. That the money furnished in Jamaica by Earle, was advanced in a foreign port, and for necessary supplies, and that a lien on the vessel was created, though there was no express hypothecation, nor other written evidence than a bill drawn by the captain on the owner. 2d. That the money paid to procure insurance on the ship was also absolutely necessary, as the vessel could not have proceeded without it. 3d. That the 600 dollars, supplied in Charleston by O'Hara and son, to pay the crew, was not less necessary; and that the parties previously agreed that the ship should be considered as pledged therefor. That Charleston is a foreign port, as relates to New-York, though both are under one government. That if either of these points be sustained, the court must exercise jurisdiction, and direct a sale.

I shall, at present, take notice merely of the plea to the jurisdiction. To constitute a right to hypothecate the ship, there must be urgent necessity, in a foreign port, and a total want of sufficient personal credit. 3 Mod. 244. Apply this rule to the present case. When this ship arrived at Jamaica, she had made 1600 dollars freight. She had met with a gale of wind, and been forced into Curracoa to refit; there she disbursed 825 dollars for that purpose, and had remaining 775 dollars. This was on the 29th November, 1797. While she remained at Jamaica, waiting, but without success, for freight home, Earle supplied 402 dollars. The captain says, Earle objected to the vessel's sailing till he should be paid; but that he afterwards agreed to come here in the ship, which he considered liable to him for the above sum. About this time Glover's letter to Campbell and O'Hara must have arrived; it is dated at New-York on the 16th December, 1797. The whole business was now changed. They, as Glover's agents, seized the vessel, turned out the captain, and put in another; but afterwards reinstated the same, upon an express agreement that he should carry the ship to Charleston, and deliver her to Daniel O'Hara and son. It must have been at that time that the insurance was made, for which the captain drew a bill of 714 dollars on Glover. Is it possible, under these circumstances to say there was a want of personal credit on the part of the supposed owner, Glover? Campbell and O'Hara acted by his directions, with a bill of sale of the ship from Hughes in their possession, and orders to attach her if they could not make good terms with the captain. This clue unravels the subsequent proceedings.

The libel states that the insurance was made by Campbell and O'Hara, as ship's husband. Does this shew a want of personal credit in the captain sufficient to create a necessity for advancing money upon the security of the ship, and to give jurisdiction to a court of admiralty? surely not.

As to Earle's claim for 402 dollars, he had a lien on the ship for that sum in Jamaica, which he relinquished by coming here in her, and receiving payment from O'Hara. Had he libelled for this advance in Jamaica, or upon his arrival in Charleston, his suit must have been sustained. As the transaction now stands, that lien is gone.

As to the 600 dollars paid for wages of the crew, by Daniel O'Hara and son, and for which the captain drew a bill on Glover, this reasoning applies more strongly than to either of the other sums. Without deciding whether this can be deemed, in any sense, a foreign port, as relates to another of the United States, it is clear that every step taken by Campbell and O'Hara, in Jamaica, or by Daniel O'Hara and son here, was taken by them as agents for Glover of New-York, owner of this ship. Glover's letters to them sufficiently evince this; from the last of which it is clear that the admiralty has no jurisdiction of this question. In that, Glover tells them that the bill for 741 dollars for insurance (the first allegation in the libel) will be due on the 15th May last, and that he will take it up.

Upon the whole, it appears that these parties have mistaken their remedy by applying to a court of admiralty. What redress they may have in equity, or at common law, it is not for me now to say. I adjudge and decree that the libel be dismissed, with costs.